# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

BRUCE KENTON JEFFERS,

Defendant.

No. CR 13-3033-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING SENTENCING**

_____

## TABLE OF CONTENTS

**I.  INTRODUCTION** ................................................................. **6**
  *A.  Factual Background* ................................................................. *6*
  *B.  Procedural Background* ............................................................. *12*
  *C.  Arguments Of The Parties* .......................................................... *14*

**II.  LEGAL ANALYSIS** ............................................................. **15**
  *A.  The Sentencing Methodology* ....................................................... *15*
  *B.  Application Of The Sentencing Methodology* ......................................... *16*
      *1.  Calculation of the guidelines range* .......................................... *16*
      *2.  Calculation of traditional guidelines-based departures* ........................ *17*
      *3.  Whether to vary upward* ....................................................... *19*

**III.  CONCLUSION** ................................................................. **25**

This sentencing opinion involves a violent felon, Bruce Kenton Jeffers, illegally in possession of a firearm and ammunition and his threatening use of them to inflict post-traumatic stress disorder upon his ex-girlfriend and their five-year-old daughter. Jeffers illegally and stealthily entered his ex-girlfriend's residence, under cover of darkness, in the wee hours of an August morning, found his ex-girlfriend on the living room couch asleep with their five-year-old daughter, stuck a loaded firearm in his ex-girlfriend's face, while holding her down with the other arm, threatened to kill her, and warned her not to call the police. Jeffers was charged with, and has pleaded guilty to, separate counts of being a felon in possession of a firearm and being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1).

This case is yet another exquisite, but all too frequent, example that correctly calculated United States Sentencing Guidelines, which are not empirically based, can be irrational.[1]  U.S. Probation, the Department of Justice, and the defense agree that the

---

[1] *See* Mark Osler & Mark W. Bennett, *A "Holocaust In Slow Motion?" America's Mass Incarceration And The Role Of Discretion*, 7 DEPAUL J. SOC. JUST. 117, 137-145 (2014) (discussing both a lack of empirical support for the Guidelines and their often irrational nature); *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) ("The commission did not use this empirical approach in developing the Guidelines for drug-trafficking offenses."); Sarah French Russell, *Rethinking Recidivist Enhancements: The Role Of Prior Drug Convictions In Federal Sentencing*, 43 U.C. DAVIS L. REV. 1135, 1182 (2010) ("Empirical evidence does not support the [firearms] guideline," albeit arguing that certain firearms guideline enhancements modeled after the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), are too harsh).  The Federal Defender Services Office has been at the forefront of efforts to "deconstruct" the Sentencing Guidelines and has amassed on-line resources "supporting the argument that [various] guidelines are not based on empirical evidence, do not advance sentencing purposes, and do not avoid unwarranted disparities or unwarranted similarities."  *See* http://www.fd.org/navigation/select-topics-in-criminal-defense/sentencing-resources/subsections/deconstructing

correctly computed advisory sentencing guidelines range in this case is 18 to 24 months, and they are right. Yet, no rational human would suggest that a guidelines range of 18 to 24 months would be an appropriate sentence in this case, based on the offense conduct alone. But wait, there's more![2] Jeffers has served five different prison terms for crimes—including voluntary manslaughter, assault with a deadly weapon, arson of an inhabited structure, evading a police officer and disregarding safety, being a felon and addict in possession of a firearm, and burglary of a home—in three different states. But wait, there's more! He has been sent to jail nine different times for other crimes. But wait, there's more! He has had his parole revoked twice and his probation once and, each time, has been sent back to prison. But wait, there's more! But for the recent United States Supreme Court decision in *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015), he would have faced a mandatory minimum sentence of 180 months and an advisory sentencing guidelines range of 188 to 235 months. Thus, *Johnson* has the staggering effect of reducing the bottom of Jeffers's advisory sentencing guidelines range from 188 months to 18 months—a whopping 95% reduction. Furthermore, Jeffers now

---

-the-guidelines. I agree with the Federal Defender Services Office about the flaws to be found in the Sentencing Guidelines, although, as this case demonstrates, I do not always agree that these flaws result in sentences that are excessive; rather, these flaws sometimes result in sentences that are insufficient.

[2] "Ron Popeil, an American inventor and infomercial personality, is credited with using the phrase "But wait, there's more!" on late-night television infomercials. Kate Bratskeir, *8 Reasons You Shouldn't Underestimate the Greatness of Ron Popeil*, HUFFINGTON POST (Oct. 6, 2014, 9:07 AM), http://www.huffingtonpost.com/2014/10/06/ron-popeil-facts-wow_n_5926408.html." Mark W. Bennett, *Unspringing The Witness Memory and Demeanor Trap: What Every Judge And Juror Needs To Know About Cognitive Psychology And Witness Credibility*, 64 AM. U. L. REV. 1331, n.281 1376 (2015).

faces a statutory *maximum* sentence of 120 months—a one-third reduction of his originally anticipated statutory *minimum* sentence.

The effect of the sentencing guidelines in Jeffers's case contrasts starkly with their effect in the case of another felon in possession of firearms and ammunition, Leslie George Simpson,[3] whom I sentenced the day before I sentenced Jeffers. Simpson was a decorated war hero who served four tours of duty in Vietnam as a combat soldier in the United States Marine Corps. While serving in Vietnam, Simpson sustained shrapnel injuries to his leg and lost hearing in one of his ears. He also earned the National Defense Service Medal, Vietnam Service Medal, Combat Action Ribbon, Good Conduct Medal, Navy Achievement Medal, Rifle Sharpshooter Badge, Vietnam Campaign Medal, the Cross of Gallantry, a Pistol Badge, and a Rifle Badge. Simpson, unlike Jeffers, suffered from, rather than inflicted, post-traumatic stress disorder, which was a consequence of Simpson's combat service. From 1994 to 2013, Simpson was the owner and operator of his own business, Lake Shore Tram, Incorporated, which installed and serviced outdoor lift and/or tram elevators. At the time of his sentencing, Simpson was retired. Simpson had two prior convictions. The first was a 1980 state conviction for second-degree theft, for which he received a suspended prison sentence, five years of probation, and no criminal history points. This conviction arose from Simpson selling 48 pigs without notice or payment to a lender. The second was a 2012 federal conviction for being a felon in possession of a firearm, for which he received five years of probation and one criminal history point. On March 11, 2015, Simpson pleaded guilty to a single count of possession of four firearms and various rounds of ammunition from about January 1, 2014, through January 21, 2015, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Simpson's offense had not involved any use or threatened use of any of the firearms in

---

[3] *See United States v. Simpson*, No. CR 15-3006-MWB (N.D. Iowa).

4

question. Yet, owing to the irrationality of the pertinent Sentencing Guidelines, Simpson's total offense level was 19—four levels higher than Jeffers's—his criminal history category was the same as Jeffers's, and his advisory sentencing guidelines range was 33 to 41 months, almost double Jeffers's. As my administrative assistant cogently asked, "Who would you rather have living next door, Jeffers or Simpson?" The answer, for most of us—apparently excluding those who formulated the firearms Sentencing Guidelines—would be Simpson.

Not surprisingly, then, the prosecution has moved for an upward departure or variance in Jeffers's case, based on Jeffers's numerous prior convictions, because those prior convictions can no longer be used to sentence Jeffers as an "armed career criminal," after *Johnson*, and they are too old to be "counted" in the determination of Jeffers's criminal history category. I have, with some frequency, disagreed with guidelines sentences that I believed were too harsh or excessive, sometimes on policy grounds,[4] but

---

[4] *See, e.g., United States v. Weller*, ___ F. Supp. 2d ___, 2015 WL 2080250 (N.D. Iowa May 5, 2015) (concluding that a conviction for contributing to the delinquency of a minor, consisting of encouraging minors to violate a curfew ordinance, should not be awarded a criminal history point pursuant to U.S.S.G. § 4A1.2, but if it should have been, a guideline sentence was excessive in light of 18 U.S.C. § 3553(a)); *United States v. Amaya*, 949 F. Supp. 2d 895 (N.D. Iowa 2013) (concluding that a guidelines sentence of 360 months to life was "grossly excessive" on a conviction for conspiring to possess with intent to distribute methamphetamine, cocaine, and marijuana and to commit money laundering); *United States v. Hayes*, 948 F. Supp. 2d 1009 (N.D. Iowa 2013) (concluding that the Sentencing Guidelines concerning methamphetamine offenses, prior to the 2014 amendment, were too harsh); *United States v. Newhouse*, 919 F. Supp. 2d 955 (N.D. Iowa 2013) (finding that a career offender guideline sentence was excessive, for a low-level, non-violent drug addict); *United States v. Williams*, 788 F. Supp. 2d 847 (N.D. Iowa 2011) (rejecting, as resulting in excessive sentences, the 18:1 crack-to-powder ratio in the Sentencing Guidelines after the Fair Sentencing Act of 2010 in favor of a 1:1 ratio); *United States v. Golden*, 679 F. Supp. 2d 980 (N.D. Iowa)

this case presents the much rarer instance in which I disagree with a guidelines sentence, because I believe that it is simply too lenient.[5]

## I.    INTRODUCTION

### A.    Factual Background

According to the Second Amended And Final Presentence Investigation Report (2nd Amended PSIR) (docket no. 80), the offense conduct leading to Jeffers's guilty plea in this case is the following:

---

(rejecting, as resulting in excessive sentences, the 100:1 crack-to-powder ratio in the Sentencing Guidelines prior to the Fair Sentencing Act of 2010 in favor of a 1:1 ratio), *aff'd*, 394 F. App'x 347 (8th Cir. 2010); *United States v. Jacob*, 631 F. Supp. 2d 1099 (N.D. Iowa 2009) (rejecting, as excessive, the Sentencing Guidelines for sexual exploitation of a minor); *United States v. Gully*, 619 F. Supp. 2d 633 (N.D. Iowa 2009) (rejecting, as resulting in excessive sentences, the 100:1 crack-to-powder ratio in the Sentencing Guidelines prior to the Fair Sentencing Act of 2010 in favor of a 1:1 ratio); *United States v. Beiermann*, 599 F. Supp. 2d 1087 (N.D. Iowa 2009) (rejecting, as excessive, certain Sentencing Guidelines for "child pornography" offenses).

[5] *See United States v. Vandebrake*, 771 F. Supp. 2d 961 (N.D. Iowa 2011) (rejecting, on policy grounds, the relatively lenient treatment of antitrust violators in the Sentencing Guidelines, as compared to defendants sentenced for fraud, and imposing a sentence on an antitrust defendant of 48 months, rather than a sentence in the guidelines range of 21 to 27 months), *aff'd*, 679 F.3d 1030 (8th Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S.Ct. 1457 (2013); *United States v. Foy*, 646 F. Supp. 2d 1055 (N.D. Iowa 2009) (varying upward from an advisory sentencing guidelines range of 210 to 262 months to 480 months of imprisonment for the defendant's "threatening communications" offense in violation of 18 U.S.C. § 876(b) and (c)), *aff'd*, 617 F.3d 1029 (8th Cir. 2010), *cert. denied*, 562 U.S. 1236 (2011); *United States v. Yahnke*, 297 F. Supp. 2d 1173 (N.D. Iowa 2003) (concluding that a guidelines sentence was insufficient in light of the defendant's past criminal conduct and likelihood that he would commit other crimes), *aff'd*, 395 F.3d 823 (8th Cir. 2005); *United States v. Flores*, 223 F. Supp. 2d 1016 (N.D. Iowa 2002) (concluding that a guidelines sentence was insufficient in light of the defendant's past criminal conduct, displaying a propensity for violence and recidivism, and the need to protect society), *aff'd*, 336 F.3d 760 (8th Cir. 2003).

On August 5, 2013, Fort Dodge, Iowa, police officers were dispatched to a domestic disturbance involving a firearm. They were advised that [Jeffers] had entered the residence of his estranged girlfriend and mother of his children, Julie Jensen, at [*******************], Fort Dodge, Iowa. Jensen advised that she was asleep on the couch with her daughter when [Jeffers] held her with one hand and put a gun in her face with the other. [Jeffers] threatened Jensen and told her not to call the police. Jensen advised the officers that she and [Jeffers] had been together since 1999 and that they separated in November 2012. She stated the defendant now had his own residence. [Jeffers] was located by officers as he was pulling into the garage at his residence located at 716 South 20th Street Fort Dodge, Iowa. Located in plain view on the front seat of [Jeffers's] truck were live rounds of .380 caliber ammunition. A loaded black Kel Tec .380 pistol with serial number L3U38 was located several feet from [Jeffers's] driveway behind a wire fence in the adjoining neighbor's yard. During his arrest and booking, [Jeffers] attempted to conceal and discard additional .380 caliber rounds of ammunition in the booking area of the jail.

2nd Amended PSIR at ¶ 4. Jeffers, who was then 52 years old, was initially charged with first-degree burglary in the Iowa District Court for Webster County and, on October 11, 2013, he was allowed to plead guilty to a lesser offense of second-degree burglary, and was sentenced to ten years in prison. *Id.* at ¶ 35.[6]

This arrest and conviction were only the latest in a long list of arrests and convictions for various kinds of criminal conduct by Jeffers over the last 36 years,

---

[6] At the time of this sentencing, additional counts charging dominion or control of a firearm or offensive weapon by a felon and domestic abuse assault with intent to inflict bodily injury or displaying a weapon were dismissed. 2nd Amended PSIR at ¶ 35.

beginning when Jeffers was 18 years old. The 2nd Amended PSIR identifies Jeffers's adult criminal convictions as the following:

| Arrest Date (Age) | Conviction/Court | Sentence/Date Imposed | Sentence Category[7] | Points[8] |
|---|---|---|---|---|
| 05/12/1979 (Age 18) | Petit Larceny/ Norfolk, VA | 05/30/1979: 30 days jail, 12 months probation, $25 fine | **J** | 0 |
| 04/07/1981 (Age 20) | Voluntary Manslaughter/ Brazoria County, TX[9] | 09/28/1981: 10 years prison 11/28/1984: Paroled 09/19/1985: Parole revoked 05/14/1986: Paroled 07/18/1988: Parole revoked 09/01/1992: Sentence discharged | **P** | 0 |

[7] This column does not appear in the 2nd Amended PSIR. I have added it, however, for the purpose of readily determining the nature of the penalty imposed upon Jeffers for each offense. The "sentence categories" are the following **J** (jail), **P** (prison), **Pb** (probation). Only the highest category is shown, except where prison for a probation or parole violation followed a jail sentence on the original offense.

[8] This column is criminal history points assigned to the offense pursuant to U.S.S.G. § 4A1.2(e)(3) for all but the last two convictions, pursuant to U.S.S.G. § 4A1.1(c) for the penultimate conviction (04/27/2010 arrest for driving under the influence and possession of drug paraphernalia), and pursuant to U.S.S.G. § 4A1.2(a) for the last conviction (08/05/2013 arrest for the burglary of his ex-girlfriend's home).

[9] The 2nd Amended PSIR provides the following explanation of this offense:

> The defendant was named in an Indictment charging him as follows: the defendant did then and there intentionally and knowingly cause the death of an individual; to wit, J. Mel Harsharger by stabbing him with a knife. He was found guilty by trial jury of Voluntary Manslaughter. Parole records were requested but were not received.

| Arrest Date (Age) | Conviction/Court | Sentence/Date Imposed | Sentence Category[7] | Points[8] |
|---|---|---|---|---|
| 08/10/1985 (Age 24) | Assault with Deadly Weapon Not Firearm: Great Bodily Injury Likely/Orange County, CA | 10/03/1985: 30 days jail, 36 months probation | **J** | 0 |
| 09/04/1987 (Age 26) | Arson: Structure/ Forest Land/ Orange County, CA | 11/16/1987: 2 years prison 10/19/1988: Paroled | **P** | 0 |
| 04/17/1990 (Age 29) | Disorderly Conduct: Prostitution/ Orange County, CA | 05/22/1990: 36 months probation, fine | **Pb** | 0 |
| 10/07/1990 (Age 29) | Evade Peace Officer: Disregard Safety/ Orange County, CA[10] | 11/30/1990: 10 days jail (suspended), 36 months probation 09/10/1991: Probation revoked, committed to state prison 16 months | **J** **P** | 0 |

2nd Amended PSIR at ¶ 22.

[10] The 2nd Amended PSIR provides the following explanation of this offense:

> The defendant was named in a one-count Felony Complaint charging as follows: the defendant did willfully and unlawfully, while operating a motor vehicle and with the intent to evade, flee, and otherwise attempt to elude a pursuing peace officer's motor vehicle while all of the following conditions existed: the peace officer's motor vehicle exhibited at least one lighted red lamp visible from the front and the defendant either saw or reasonably should have seen the lamp, the peace officer's motor vehicle was sounding its siren as was reasonably necessary, the peace officer's motor vehicle was distinctively marked and was operated by a peace officer. It is further alleged that the defendant drove with a willful and wanton disregard for the safety of persons and property, all in violation of Section 2800.2 of the Vehicle Code, punishable by two to three years imprisonment.

| Arrest Date (Age) | Conviction/Court | Sentence/Date Imposed | Sentence Category[7] | Points[8] |
|---|---|---|---|---|
| 01/15/1991 (Age 29) | Felon/Addict/Etc. Possess Firearm/ Riverside County, CA | 05/15/1991: 16 months prison | **P** | 0 |
| 08/06/1992 (Age 31) | Battery (2 counts)/Lake County, IL | 09/25/1992: Jail (not specified) | **J** | 0 |
| 02/11/1997 (Age 36) | Drive Under Influence Liquor/Scottsdale City Magistrate Court, AZ | 11/26/1997: 1 day jail, fine | **J** | 0 |
| 05/06/1997 (Age 36) | Possession of Marijuana/ Maricopa County, AZ | 05/19/1997: 1 year probation, fine | **Pb** | 0 |
| 03/10/1999 (Age 38) | Assault (Domestic Violence)/ Scottsdale, AZ[11] | 04/07/1999: 1 day jail, 2 years probation | **J** | 0 |

---

2nd Amended PSIR at ¶ 26.

[11] The 2nd Amended PSIR provides the following explanation of this offense, as amended in light of the defendant's objections:

> The Scottsdale Police Department report reflects the defendant arrived at his residence and was unable to park his motorcycle in the garage due to his live-in girlfriend's son's car being in the way. The defendant became upset with William Geweke, his girlfriend's adult son, punched a hole in Geweke's bedroom door, and opened the door. Geweke left the room and entered an adjoining bedroom, closed the door, locked it, and called the police. The defendant then punched a hole in the other door and unlocked the door. During the incident, the defendant threatened Geweke by saying he was going to "kick his ass." An additional count charging Damage Property (Domestic Violence) was dismissed.

2nd Amended PSIR at ¶ 31.

| Arrest Date (Age) | Conviction/Court | Sentence/Date Imposed | Sentence Category[7] | Points[8] |
|---|---|---|---|---|
| 05/06/1999 (Age 38) | Count 1: Driving Under the Influence<br>Count 2: Driving Under the Influence with BAC of .10 or More<br>Count 3: Extreme Driving Under the Influence with BAC .15 or More/Phoenix Municipal Court, AZ | 02/16/2001: Count 1: Fine<br>Count 2: Fine<br>Count 3: 15 days jail, fine | **J** | 0 |
| 09/16/1999 (Age 38) | Count 1: Aggravated Driving Under the Influence/Maricopa County, AZ | 01/11/2001: 4 months prison (suspended), 5 years intensive probation<br>01/11/2005: Early termination from probation | **Pb** | 0 |
| 04/27/2010 (Age 49) | Count 1: Driving Under the Influence – Impaired<br>Count 2: Possession of Drug Paraphernalia/Gila County, AZ | 04/25/2011: Counts 1-2: 10 days jail (9 days suspended), 12 months probation<br>05/14/2012: Discharged from probation | **J** | 1 |
| 08/05/2013 (Age 52) | Burglary 2nd Degree/ Webster County, IA[12] | 10/11/2013: 10 years prison, $1,000 fine (fine suspended) | **P** | 0 |

---

[12] This offense arose from the same incident as the current federal charges. It is described, in the body of this decision, in the quotation from the offense conduct statement in the 2nd Amended PSIR at ¶ 4. The prosecution contends that Jeffers was originally charged in state court with first-degree burglary, but once Jeffers was also charged with federal offenses, the state prosecutor allowed him to plead guilty to a lesser offense of second-degree burglary, and recommends that Jeffers's state prison sentence be served concurrently with his anticipated federal prison sentence.

### B. *Procedural Background*

After Jeffers was arrested on August 5, 2013, and charged with state offenses, he was also charged in a federal Indictment (docket no. 1) in this court on September 19, 2013. The charges against Jeffers are separate counts of being a felon in possession of a firearm (**Count 1**) and being a felon in possession of ammunition (**Count 2**), in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1). The prior convictions for offenses punishable by imprisonment for a term exceeding one year identified in these counts were a September 19, 1981, conviction (on his April 7, 1981, arrest) for voluntary manslaughter in Brazoria County, Texas; a November 16, 1987, conviction (on his September 4, 1987, arrest) for arson of an inhabited structure or property in Orange County, California; a May 7, 1991, conviction (on his January 15, 1991, arrest) for felon in possession of a firearm in Riverside County, California; a September 10, 1991, conviction for evading an officer, willful disregard, in Orange County, California;[13] and an April 15, 2011, conviction (on his April 27, 2010, arrest) for possession of drug paraphernalia in Gila County, Arizona.

On July 7, 2014, Jeffers pleaded guilty to both counts of the Indictment before United States Magistrate Judge Leonard T. Strand. *See* Hearing Minutes (docket no. 40). In a Report And Recommendation Concerning Guilty Plea (docket no. 41), filed that same day, Judge Strand recommended that I accept Jeffers's pleas. After the parties filed Waivers (docket nos. 42 and 43) of any objections to the Report And Recommendation, I accepted Jeffers's guilty pleas by Order (docket no. 46), also filed

---

[13] From the 2nd Amended PSIR, it appears that this conviction was actually for the arrest on October 7, 1990, for which Jeffers was originally sentenced to ten days in jail, but for which his probation was revoked on September 10, 1991, and he was sentenced to 16 months in prison.

July 7, 2014. Jeffers's sentencing hearing was originally set for October 23, 2014, but was continued several times.

At the time of Jeffers's indictment and guilty plea, the prior convictions listed in the Indictment would likely have qualified as predicate "violent felony" offenses for an Armed Career Criminal penalty pursuant to the "residual clause" of 18 U.S.C. § 924(e)(2)(B)(ii). Thus, Jeffers potentially faced a mandatory minimum sentence of fifteen years. 18 U.S.C. § 924(e)(1). Indeed, early drafts of the PSIR (docket nos. 53 and 62) scored Jeffers as an "armed career criminal," calculated his mandatory minimum sentence as fifteen years and his maximum sentence as life imprisonment, his offense level as 31, his criminal history category as VI, and his advisory sentencing guidelines range as 188 to 235 months.

On June 26, 2015, however, the United States Supreme Court handed down its decision in *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015), in which it held that the "residual clause" of the Armed Career Criminal Act (ACCA), violates the Constitution's guarantee of due process. Consequently, the 2nd Amended PSIR, filed on June 29, 2015, calculated Jeffers's statutory maximum sentence as ten years, with no mandatory minimum sentence, his offense level as 15, his criminal history category as I (with only one criminal history point), and his advisory sentencing guidelines range as 18 to 24 months, a dramatic difference from the prior calculations.

By Order (docket no. 85), filed September 2, 2015, Jeffers's sentencing hearing was reset for September 28, 2015. On September 21, 2015, the prosecution filed the Motion For Upward Departure And/Or Upward Variance (docket no. 90) now before me. On September 22, 2015, Jeffers filed his Sentencing Brief And Resistance To Government's Motion For Upward Departure Or Variance (docket no. 94).

## C.     Arguments Of The Parties

Before turning to my ruling on the prosecution's Motion For Upward Departure And/Or Upward Variance, I will summarize the parties' arguments on that Motion, both in writing and at the sentencing hearing.  However, for reasons that I will explain, below, I will focus on their arguments concerning an upward variance.

In support of its Motion, the prosecution argues that an upward variance is appropriate in light of the number of Jeffers's prior convictions, the nature of those convictions, and the pattern of dangerousness revealed by those convictions.  Indeed, the prosecution argues that the regular operation of the Sentencing Guidelines fails to capture the degree of ongoing danger that Jeffers poses to the victim in this case and to the public in general.  The prosecution requests an upward variance to the statutory maximum of ten years of imprisonment.

In contrast, Jeffers resists the prosecution's Motion to the extent that the prosecution seeks an upward variance to the statutory maximum of ten years of imprisonment.  He admits that a significant period of incarceration will, undoubtedly, allow some peace of mind and healing for his children and his ex-girlfriend, but he argues that a ten-year sentence is excessive, particularly where additional protections can be provided by imposing a three-year term of supervised release.  Jeffers also argues that his age is a factor that militates against finding that he is likely to recidivate.  He contends that his more serious prior offenses occurred when he was a young man, still in his twenties.  He also argues that it cannot fairly be said that he received extremely lenient treatment for his prior serious, assaultive conduct.  Jeffers points out that, from 1999 to 2010, he not only had no criminal convictions for violent behavior, but had no arrests of any kind.  He attributes this period of law-abiding conduct to abstinence, treatment of his drug and alcohol abuse problems, a supportive relationship with his girlfriend, Julie

14

Jensen, and his desire to be a good father for his three children with her. He contends that his recent criminal conduct occurred after the failure of his contractor business led to depression, a stress disorder, and renewed alcohol abuse, that he was intoxicated at the time of the charged offenses, and that he would never have entered Jensen's home if he had not been intoxicated.

## II.    LEGAL ANALYSIS

### A.    The Sentencing Methodology

The prosecution seeks either or both an upward "departure" and an upward "variance." As the Eighth Circuit Court of Appeals has explained,

> "'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." *Irizarry v. United States*, 553 U.S. 708, 714, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008); *United States v. Mireles*, 617 F.3d 1009, 1012 n. 2 (8th Cir.2010). In contrast, a "variance" is a non-Guidelines sentence based on the § 3553(a) statutory sentencing factors. *See* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary, to [achieve Congressional purposes of sentencing].").

*United States v. Omoware*, 761 F.3d 951, 952 (8th Cir. 2014) (also observing that notice pursuant to Rule 32(h) of the Federal Rules of Criminal Procedure "'is not required when the adjustment to the sentence is effected by a variance, rather than by a departure'" (quoting *United States v. Levine*, 477 F.3d 596, 606 (8th Cir. 2007), in turn quoting *United States v. Long Soldier*, 431 F.3d 1120, 1122 (8th Cir. 2005))); *and compare United States v. Solis–Bermudez*, 501 F.3d 882, 884 (8th Cir. 2007) ("Since [*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005)], we have attempted to carefully distinguish between sentencing departures, which are provided for in Chapter 5, Part K of the United States Sentencing Guidelines (USSG) Manual . . . ,

and sentencing variances, which are non-Guidelines sentences based on the factors enumerated in 18 U.S.C. § 3553(a)." (internal citations omitted)).

The Eighth Circuit Court of Appeals has repeatedly stated the proper sentencing methodology to maintain a proper distinction between a "departure" and a "variance," and "to facilitate meaningful appellate review," as follows:

> [W]e have directed district courts to follow a three-step sentencing process. First, the district court must calculate the appropriate advisory Guidelines range based on the applicable offense level and the criminal history category. Then, the district court should consider whether any traditional Guidelines-based departures apply. And only after completing steps one and two should the district court then consider the other § 3553(a) factors to decide whether to impose a Guidelines or non-Guidelines sentence [i.e., whether to vary].

*Solis–Bermudez*, 501 F.3d at 884 (internal citations omitted); *accord United States v. Soto*, 779 F.3d 525, 527-28 (8th Cir. 2015) (quoting this portion of *Solis-Bermudez*, with the bracketed emendations shown above); *United States v. VandeBrake*, 679 F.3d 1030, 1039 n.7 (8th Cir. 2012) (identifying the same three-step process, citing *United States v. Shannon*, 414 F.3d 921, 923-24 (8th Cir. 2005)).

### B. Application Of The Sentencing Methodology

#### 1. Calculation of the guidelines range

As noted just above, in the three-step sentencing process, first, the district court must "calculate the appropriate advisory Guidelines range based on the applicable offense level and the criminal history category." *Solis-Bermudez*, 501 F.3d at 884 (citations omitted). The 2nd Amended PSIR calculates Jeffers's offense level as 15, his criminal history category as I (with only one criminal history point), and his advisory sentencing guidelines range as 18 to 24 months. *See* 2nd Amended PSIR at ¶ 76. The parties

suggest no error in these Guidelines calculations, and I find none.  Thus, I adopt it as my determination of Jeffers's potential guidelines sentence.

## 2. Calculation of traditional guidelines-based departures

The second step in the sentencing process is that "the district court should consider whether any traditional Guidelines-based departures apply." *Solis-Bermudez*, 501 F.3d at 884 (emphasis added).  The use of the permissive word "should" suggests that this step is hortatory, not mandatory.  I agree with the prosecution that, if a departure were the only relevant issue, it would likely be appropriate to make a traditional departure for "underrepresentation of criminal history," pursuant to U.S.S.G. § 4A1.3(a)(1), which provides that a district court may apply an upward departure "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."

As the Eighth Circuit Court of Appeals has explained,

> The type of reliable information relevant in considering such a departure includes prior sentences not used in computing the criminal history category, § 4A1.3(a)(2)(A), prior sentences of substantially more than one year resulting from "independent crimes committed on different occasions," § 4A1.3(a)(2)(B), as well as prior similar adult criminal acts which did not result in a conviction, § 4A1.3(a)(2)(E).

*United States v. Bolt*, 782 F.3d 388, 391 (8th Cir. 2015).  Jeffers has each of these kinds of prior criminal conduct.  Furthermore, "the court is not limited to considering only th[e] factors [set out in U.S.S.G. § 4A1.3]." *United States v. Outlaw*, 720 F.3d 990, 992 (8th Cir. 2013).  Rather, "the court may consider a wide variety of other information," including "the substantial likelihood a defendant will commit future crimes or his capacity for future violence," and "a defendant's prior serious criminal offenses, even if those offenses are different in kind from the instant offense." *Id.* (internal

quotation marks and citations omitted). These factors may also be present here. Finally, in determining the extent of the upward departure, the district court is directed to "us[e], as a reference, the criminal history category applicable to a defendant whose criminal history or likelihood to recidivate most closely resembles that of the defendant's." U.S.S.G. § 4A1.3(a)(4)(A). When considering this directive, the Eighth Circuit Court of Appeals explained, "In other words, the sentencing court should be guided, at least in part, by the criminal history category which would have applied had the uncounted prior convictions been computed." *United States v. Harlan*, 368 F.3d 870, 874-75 (8th Cir. 2004). If Jeffers's uncounted prior convictions, listed in the Indictment, had been computed, he would have had an additional 12 criminal history points, and the criminal history category that would have applied would have been VI, based on a total of 13 criminal history points. *Id*. Even with a criminal history category of VI, Jeffers's offense level of 15 would suggest an upward departure only to 41 to 51 months of imprisonment. As I have previously noted, there is some doubt as to whether a sentencing court may disagree with a criminal history guideline on policy grounds. *See United States v. Weller*, ___ F. Supp. 2d ___, ___, n.5, 2015 WL 2080250, *14 n.5 (N.D. Iowa May 5, 2015) (citing *United States v. Leon-Alvarez*, 532 F.3d 815, 818-19 (8th Cir. 2008)).

An upward departure on the grounds identified by the prosecution would be appropriate, if I were not inclined to proceed to step three, and consider an upward variance based on the § 3553(a) factors. *Solis-Bermudez*, 501 F.3d at 884 (third step). I will proceed to step three, however, because consideration of the broader § 3553(a) factors results in a more comprehensive decision about a sentence that "is sufficient, but not greater than necessary, to comply with the purposes" of sentencing. *See* 18 U.S.C. § 3553(a).

### 3. Whether to vary upward

At the third step of the sentencing process, "the district court then consider[s] the other § 3553(a) factors to decide whether to impose a Guidelines or non-Guidelines sentence," *Solis–Bermudez*, 501 F.3d at 884, which the Eighth Circuit Court of Appeals has indicated means, essentially, "whether to vary." *Soto*, 779 F.3d at 527-28 (adding this language as a bracketed emendation to a quotation of the statement from *Solis-Bermudez*, 501 F.3d at 884). As the Eighth Circuit Court of Appeals recently explained,

> These [§ 3553(a)] factors include the nature and circumstances of the offense and the history and characteristics of the defendant, the need to promote respect for the law and protect the public, the sentencing range, and the need to avoid unwarranted sentence disparities. *See* 18 U.S.C. § 3553(a).

*United States v. Stoner*, 795 F.3d 883, 884 (8th Cir. 2015). "'[F]actors that have already been taken into account in calculating the advisory Guidelines range can nevertheless form the basis of a variance.'" *Id.* at 885 (8th Cir. 2015) (quoting *United States v. David*, 682 F.3d 1074, 1077 (8th Cir. 2012)).

Somewhat more specifically, "[a]n upward variance may be based on 'the need to protect the public' and 'criminal history not accounted for in [a defendant's] criminal history category.'" *United States v. Archambault*, 777 F.3d 982, 983 (8th Cir. 2015) (quoting *United States v. Jones*, 612 F.3d 1040, 1045 (8th Cir. 2010)). Indeed, the court may also consider the extent and likely duration of emotional or psychological injuries to the defendant's victims as a basis for an upward variance. *See United States v. Roberts*, 747 F.3d 990, 991 (8th Cir. 2014); *see also United States v. Lee*, 790 F.3d 12, 19 (1st Cir. 2015) (implicitly recognizing "protecting the victims," as well as protecting the public, as a legitimate ground for an upward variance). The court may also consider pretrial conduct, "'including conduct while free on bond, . . . because it is relevant to

the history and characteristics of the defendant, and to the need for the sentence to promote respect for the law,'" *Archambault*, 777 F.3d at 983 (quoting *United States v. Schlosse*r, 558 F.3d 736, 742 (8th Cir. 2009)), as well as probation violations following prior convictions. *United States v. Keatings*, 787 F.3d 1197, 1203 (8th Cir. 2015). It is also permissible to consider "the sentencing objectives of punishment and deterrence." *United States v. Braggs*, 511 F.3d 808, 811, 813 (8th Cir. 2008). Finally, at least for present purposes, an upward variance may be based on "recidivism." *United States v. Barrett*, 552 F.3d 724, 726 (8th Cir. 2009). "It [i]s 'within the court's discretion to determine what weight to give each factor in the determination' of [a defendant's] sentence." *Archambault*, 777 F.3d at 983 (quoting *United States v. Gasaway*, 684 F.3d 804, 808 (8th Cir. 2012)).

Also,

> A court must explain an unusually lenient (or unusually harsh) sentence "with sufficient justifications," but an appellate court may not require "extraordinary circumstances to justify a sentence outside the Guidelines range." *Gall [v. United States]*, 552 U.S. [38,] 46–47, 128 S.Ct. 586 [(2007)]. The appellate court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id*. at 51, 128 S.Ct. 586. "[T]hat the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal." *Id.*

*Stoner*, 795 F.3d at 885; *accord United States v. Butler*, 743 F.3d 645, 647–48 (8th Cir. 2014) (explaining that, where the district court "articulated specific reasons for varying upward," "[n]o further explanation was required").

The obvious first ground for an upward variance, in this case, is Jeffers's extensive "'criminal history not accounted for in [his] criminal history category.'" *Archambault*, 777 F.3d at 983 (quoting *Jones*, 612 F.3d at 1045)). Indeed, here, Jeffers's extensive

criminal history is barely taken into account at all in calculating his criminal history category or his advisory sentencing guidelines range. The 2nd Amended PSIR assigns him a single criminal history point, for the 2010 offense of possession of drug paraphernalia in Gila County, Arizona, for which he received 10 days in jail (with 9 days suspended) and 12 months of probation. 2nd Amended PSIR at ¶ 34. Yet, as I pointed out at the beginning of this opinion, and the chart of Jeffers's prior convictions shows, Jeffers has served five different prison terms for crimes—including voluntary manslaughter, assault with a deadly weapon, arson of an inhabited structure, evading a police officer and disregarding safety, being a felon and addict in possession of a firearm, and burglary of a home—in three different states, and he has been sent to jail nine different times for other crimes, only one of which is accounted for in his criminal history category. This factor weighs heavily in favor of a very substantial upward variance.

A close companion of Jeffers's prior convictions, as a factor weighing in favor of an upward variance, is his obvious "recidivism." *Barrett*, 552 F.3d at 726. The chart of prior convictions demonstrates that, whenever Jeffers was not incarcerated, it was not long before he engaged in further criminal conduct. He had four criminal convictions from 1979 to 1987, notwithstanding that he spent approximately five years during that time in prison for voluntary manslaughter and parole violations; he had nine convictions in the 1990s, notwithstanding two prison terms and several jail terms; and, despite a "quiet" decade in the 2000s, he returned to criminal conduct in the 2010s—and to prison—almost as soon as his legitimate contractor business ran into trouble. It is clear to me that a substantial upward variance is appropriate to "promote respect for the law," in light of Jeffers's recidivist tendencies. *Stoner*, 795 F.3d at 884 (citing this as one of the factors set out in § 3553(a)).

Not only is Jeffers's criminal history extensive, the nature of Jeffers's convictions strongly supports an upward variance based on "'the need to protect the public.'"

21

*Archambault*, 777 F.3d at 983 (quoting *Jones*, 612 F.3d at 1045)). The prior convictions for voluntary manslaughter, assault with a deadly weapon, arson of an inhabited structure, evading a police officer and disregarding safety, being a felon and addict in possession of a firearm, and burglary of a home all strongly implicate public safety, demonstrating Jeffers's flagrant disregard for the safety of others and, indeed, his willingness to threaten, injure, or even kill others. Even more specifically, I find credible the evidence submitted at the sentencing hearing concerning the post-traumatic stress suffered by Jeffers's ex-girlfriend and one of her children and the continuing trauma and fear suffered by his ex-girlfriend and all of her children, as the result of Jeffers's conduct.[14] Protecting these victims from the possibility of a recurrence of Jeffers's

---

[14] For example, in a victim impact statement (docket no. 80-3), Jeffers's ex-girlfriend states the following:

> Both myself and my children have reoccuring nightmares. Two of the children wake up in the night crying and yelling "leave me alone daddy." When the children see a truck that looks like the one their dad drove they become fearful and worry that he is coming to get them. I try to explain that he is in prison but they feel he will escape. One of the children was so fearful after this incident that the child was afraid to go to school saying that "I am afraid dad will send someone to get me." [T]his child had to switch schools and be separated from the rest of the family in order to feel somewhat safer. It is unfortunate that the selfishness in their father has caused all this pain and suffering to his own children. This shows that this man has no remorse or feeling for anyone but himself. None of the children feel safe in their own home, they are unable to sleep alone due to the fear their own father has caused them.

violent conduct toward any of them also strongly supports a substantial upward variance. *See Roberts*, 747 F.3d at 991; *accord Lee*, 790 F.3d at 19 (implicitly recognizing "protecting the victims," as well as protecting the public, as a legitimate ground for an upward variance); 18 U.S.C. § 3553(a)(2)(C).

Likewise, I find that a substantial upward variance is warranted to serve "the sentencing objectives of punishment and deterrence," *see* 18 U.S.C. § 3553(a)(2)(A) and (B)), even considering only Jeffers's offense conduct in this case. *Braggs*, 511 F.3d at 811. Threatening an ex-girlfriend with a gun, in front of one or more of her children, and threatening her not to call the police about the incident, is conduct that must be soundly punished and strongly deterred, even if it is only an isolated incident. In my view, an advisory sentencing guidelines sentence of 18 to 24 months, or even a Guidelines sentence based on an upward departure to 41 to 51 months, using criminal history category VI, falls well short of adequate punishment and deterrence for such conduct.

---

This statement is consistent with the testimony by Jeffers's ex-girlfriend at the sentencing hearing. One of the children of Jeffers and his ex-girlfriend also provided the following letter:

> Dear Judge,
>
> I hope that you can give my dad the most time in jail he can get. I know as soon as he gets out he will try and find where we live and hurt my mom. He already tried to kill my mom once, but my sister was there so he didn't.
>
> From: [L.J.]

Prosecution's Exhibit 1002. Jeffers's ex-girlfriend testified that their child, who is 13-years-old, wrote this letter on his own initiative, and the defense did not contest that testimony or the sincerity of the letter. This is the first time—certainly, the first time that I can recall—in my twenty-one-plus years sentencing federal defendants that I have received a letter from a child of a defendant requesting that I give his or her parent the *most* time in prison possible.

This is not to say that Jeffers has no mitigating factors to consider pursuant to § 3553(a).  He is correct that he is now 54 years of age and that the majority of his prior criminal convictions were years ago, prior to a ten-year hiatus during which he maintained a productive career as a contractor and had a successful family relationship. While it may be true that statistics show that criminals "age out" of criminal conduct in general, that argument hardly helps Jeffers, who committed this crime when he was 52. Jeffers has also demonstrated that he can make productive use of his time in jail or prison. *See Archambault*, 777 F.3d at 983 (explaining that a court may consider pretrial conduct, including conduct while free on bond, as relevant to a defendant's history and characteristics and the need to promote respect for the law).  Jeffers is to be praised for his completion of his GED while in prison the first time; his participation in a program in Phoenix, Arizona, involving removal of prison tattoos and substance abuse treatment; his conscientious adherence to child support obligations from 2012 until his arrest in August of 2013; his numerous attempts to control his alcohol abuse problems by taking advantage of programs in and out of jail or prison; and, while recently incarcerated at the Fort Dodge Correctional Facility, his participation in a program to train guide dogs, his completion of fire and OSHA safety training programs, his completion of the Moderate Intensive Family Violence Prevention Program, his participation in a parenting program called "Inside Out Dads," and his attempt to start a program for tattoo removal. Nevertheless, these efforts, while certainly laudable, do not, in my view, outweigh the factors, discussed above, demonstrating that a substantial upward variance is justified in Jeffers's case.  *See Archambault*, 777 F.3d at 983 ("It [i]s 'within the court's discretion to determine what weight to give each factor in the determination' of [a defendant's] sentence." (quoting *Gasaway*, 684 F.3d at 808)).

For these reasons, I imposed a substantial upward variance from Jeffers's advisory guidelines sentencing range in Jeffers's sentence at the sentencing hearing on September 29, 2015.

### III. CONCLUSION

As the statement of reasons, above, shows, *see Butler*, 743 F.3d at 647–48 (explaining that, where the district court "articulated specific reasons for varying upward," "[n]o further explanation was required"), I believe that a substantial upward variance, rather than no variance or an upward departure, is sufficiently compelled in this case, *see Gall*, 552 U.S. at 46, and will result in a sentence that is "sufficient, but no greater than necessary, to serve the purposes" of sentencing. *Omoware*, 761 F.3d at 952; 18 U.S.C. § 3553(a). In reaching this difficult decision, I have analyzed the § 3553(a) congressionally mandated factors to engage a "sense of balance, which allows one to weigh that which cannot be measured,"[15] to the best of my abilities.

THEREFORE,

1.      The prosecution's September 21, 2015, Motion For Upward Departure And/Or Upward Variance (docket no. 90) is granted in part, and denied in part, as follows:

> a.      The part of the Motion seeking an upward departure is **denied**; but

> b.      The part of the Motion seeking an upward variance is **granted**, and, at the sentencing hearing on September 29, 2015, I imposed a substantial upward variance from Jeffers's advisory guidelines sentencing range to **108 months of incarceration** on each of the Counts, with those sentences to run *concurrently*,

---

[15] Guido Calabresi, *What Makes a Judge Great: To A. Leon Higginbotham, Jr.*, 142 U. PA. L. REV. 513, 513 (1993).

and this sentence shall run ***concurrently*** with Jeffers's remaining sentence on the state conviction, followed by the maximum term of **3 years of supervised release**;

2.　　A copy of this Memorandum Opinion And Order Regarding Sentencing shall be attached to the Judgment in this case.

**IT IS SO ORDERED**.

**DATED** this 30th day of September, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA